EMILIO A. DiIORIO, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 90–05–00233

(Decided November 1, 1990)

*Emilio A. Di Iorio*, pro se.
*Stuart M. Gerson*, Assistant Attorney General, *Joseph I. Liebman*, Attorney-in-Charge, International Trade Field Office, (*Nancy M. Frieden*), Civil Division, United States Department of Justice, for the defendant.

### OPINION

RESTANI, *Judge:* Pursuant to Rule 56.1(d) of the Rules of the United States Court of International Trade, plaintiff requests a Judgment Upon the Administrative Record regarding the denial of his application for a Customs broker's license.

Plaintiff seeks reversal of the U.S. Customs Service's denial of his Customs broker's license. The denial was based on plaintiff's failure to achieve a passing score of 75 on the Customs broker's examination. *See* 19 C.F.R. § 111.13(e) (1989). For the following reasons plaintiff's motion is denied and the case is dismissed.

### BACKGROUND

Plaintiff sat for the Customs broker examination on October 2, 1989. In a letter dated October 23, 1989, the U.S. Customs Service ("Customs") advised plaintiff that he received a score of 71 on the examination, whereas a grade of 75 or better was required to pass. On November 10, 1989, plaintiff wrote a letter to the Broker Compliance and Evaluation Branch of Customs requesting a review of his examination and protesting sixteen of the test questions. In a letter dated December 26,

---

[9] This rule states that, "if two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest".

1989, Customs informed plaintiff that he would be given credit for two additional points, but that the new score of 73 was still two points short of a passing grade.

Plaintiff then sought to have the matter reviewed by the Secretary for Enforcement, U.S. Department of Treasury. The Assistant Secretary for Enforcement (the "Assistant Secretary") rejected plaintiff's appeal of the grading of eight exam questions in a letter dated March 1, 1990. In a second letter to the Assistant Secretary, dated April 4, 1990, plaintiff pursued his request for review of the grading of six questions on the Customs exam. The Assistant Secretary denied plaintiff's appeal of the grading of those six questions in a letter dated April 26, 1990.

This action was commenced when plaintiff sent a letter dated April 27, 1990, to this Court requesting review of the administrative agency's denial of his application to be licensed as a Customs broker. Plaintiff requests reversal of the Assistant Secretary's decision based on his arguments concerning five questions on the exam.[1]

## DISCUSSION

### *Standard of Review*

In accordance with the scope and standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, the final administrative decision of the Assistant Secretary in this case will be upheld, unless his decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988).[2]

Given that the Assistant Secretary's decision rested on his analysis of a standard examination, this court notes that, as a general matter, it will not substitute its own judgment on the merits of the Customs examination, but will examine decisions made in connection therewith on a reasonableness standard. Judicial intrusion into agency decisionmaking regarding the formulation and grading of standardized examination questions should be limited in scope. Accordingly, this court will grant some deference to the administrative determination as it relates to the appropriateness of various questions and the answers selected on the Customs broker's licensing examination.

Technically this court is reviewing the Assistant Secretary's decision itself. In undertaking this review, however, the court must necessarily conduct some inquiry into plaintiff's arguments and defendant's responses concerning each of the five challenged test questions. Each of these questions will be addressed in turn.

---

[1] Plaintiff has withdrawn his complaint regarding exam question 18 and therefore, the court will consider his arguments on five of the exam questions, numbers 38, 44, 70, 90 and 92.

[2] In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), the Supreme Court stated that:

Section 706(2)(A) requires a finding that the actual choice was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." * * * To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

*The Contested Questions*

### 1. *Question 38:*

Question 38 requires the examinee to apply the Customs procedures pertaining to importation of possible infringing copies as set forth in § 133.43(a) and (b) of the Code of Federal Regulations ("CFR"). Section 133.43 provides that if the district director of Customs ("director") has any reason to believe that an imported article may be an infringement of a recorded copyrighted work, he shall withhold delivery of the articles. At that time the director shall notify the importer that, unless a denial is received within thirty days stating that the articles in question do not constitute infringing copies, the goods will be subject to seizure and forfeiture. If the importer files such a denial, then the director shall furnish the copyright owner with a sample of the imported article along with a notice that the articles will be released, unless within thirty days the copyright owner files a written demand for the exclusion from entry of the goods at issue as well as a bond conditioned to hold the importer harmless from any loss suffered should the Commissioner of Customs determine that the article is not an infringing copy.

Question 38 states:

> Your client, who is just starting to import toy stuffed dinosaurs, has a shipment under detention by Customs for possible copyright violation. Following your advice, he wrote to the District Director of Customs asserting that: (1) the articles are not piratical copies, and (2) because the dinosaurs are sold seasonally, continued detention will force him out of business. The District Director will:
> A. Release the shipment to the importer unconditionally because they are seasonal and the District Director has authority to determine if they violate the copyright.
> B. Furnish the copyright owner with a sample and release the shipment if he does not respond within 30 days.
> C. Release the shipment if the importer agrees to post an additional bond.
> D. Consider the goods to be restricted and seize the shipment.

Defendant states that plaintiff chose B which defendant characterized as an incorrect answer. In its Memorandum, defendant states that the official answer selected by Customs was D. Plaintiff, however, candidly admits that the official answer sheet lists B as the correct answer and that he marked D on his answer sheet.

Plaintiff contends that to choose B as the correct answer he would have had to assume three things: that whatever his client "wrote" to the director was actually received; that such letter was received within thirty days after the denial; and that such letter was an acceptable denial. Plaintiff argues that the Assistant Secretary erred in rejecting plaintiff's appeal because requiring the examinee to leap through these assumptions in arriving at the correct answer placed an unreasonable burden on any test-taker. Despite such "ambiguities," selection of answer D would require a much greater leap of faith. While not perfect, the

question was adequate so that, as to this question, plaintiff's appeal was rejected reasonably.

2. *Question 44:*

Section 177.23 of the CFR provides that a country-of-origin advisory ruling or final determination may be requested by the following groups or individuals:

> (a) A foreign manufacturer, producer, or exporter, or a United States importer of merchandise,
> (b) A manufacturer, producer, or wholesaler in the United States of a like product,
> (c) United States members of a labor organization or other association of workers whose members are employed in the manufacture, production, or wholesale in the United States of a like product, or
> (d) A trade or business association a majority of whose members manufacture, produce, or wholesale a like product *in the United States.*

19 C.F.R. § 177.23 (1989) (emphasis added).

Question 44 asks the examinee to choose the individual or group which may *not* request a country-of-origin advisory ruling or final determination from the following five choices:

> A. Any foreign manufacturer, producer, or exporter whether or not they are actually producing or selling the item or a like product.
> B. A manufacturer in the U.S. who is contemplating producing an identical or like product.
> C. A trade association in which a majority of their members wholesale an identical or like product.
> D. Any U.S. importer of merchandise.
> E. U.S. members of a labor organization whose members are employed in the U.S. and manufacture a like product.

Plaintiff chose C because he claims that it cannot be assumed from the question that the majority of members in this trade association wholesale their product in the United States and therefore, this group may not request a country-of-origin advisory ruling or final determination.

As the test specifies in the general instructions, the *best* answer must be chosen. The conclusion that B is a better choice than C is not erroneous. The regulations make clear that a manufacturer, producer, or wholesaler in the United States must be actively producing or selling the like product. The word "contemplating" is used in the question in an attempt to discern whether the examinee realizes the distinction between those producing the like product at the present time and those who might produce it in the future. To assume that mere contemplation is equivalent to active production or wholesaling, the test-taker must actually change the meaning of the written words.

Whatever appeal answer C might have, the actual language of B is at odds with the regulation. Thus, the decision of the Assistant Secretary

to reject plaintiff's request for credit on this question was not arbitrary, capricious, or in any way contrary to law.

### 3. *Question 70:*

In question 70, the test-taker is asked to determine which statement among the four choices is a correct representation of the Customs regulations. The official answer sheet lists the single correct statement as B: "Merchandise in a foreign trade zone will be considered exported upon admission to a zone restricted status." The relevant portion of the regulations addressing exportation in a foreign trade zone provides: "Merchandise may be withdrawn for exportation at a foreign trade zone in the same or at a different port. The merchandise will be considered exported upon admission to a zone in zone-restricted status * * *" 19 C.F.R. § 144.37(g) (1989). Obviously the statement from the test is taken verbatim from the regulations and as such is a correct statement. The absence of the introductory sentence from the statement on the test in no way renders the excerpted material any less correct.

Plaintiff contends that answer D is an equally, if not more, correct answer. Choice D states that "The splitting up for exportation of shipments arriving under warehouse withdrawals for indirect exportation is permitted only when various portions of a shipment are destined to different destinations." Answer D may be considered incorrect because it is an incomplete representation of the regulation. The complete sentence in the regulations provides "The splitting up for exportation of shipments arriving under warehouse withdrawals for indirect exportation shall be permitted only when various portions of a shipment are destined to different destinations, *when the export vessel cannot properly accommodate the entire quantity, or in other similar circumstances.*" 19 C.F.R. § 144.37(b)(2) (1989) (emphasis added). Answer D does not take into account the fact that there are two other circumstances where the regulations permit the splitting up for exportation of shipments arriving under warehouse withdrawals for indirect exportation. The statement on the test retains the word "only," thereby eliminating the possibility that one condition alone would be sufficient to render the statement correct.

As B is the best answer, the Assistant Secretary's decision on this question was justified.

### 4. *Question 90:*

Question 90 states:

> Your client has imported merchandise which had been released following FDA sampling. Subsequent to release, FDA determines that the merchandise is not fit for human consumption. Customs issues a CF4647 demanding redelivery of the merchandise. The entry summary has been filed and estimated duty tendered. You should tell your client to:
> A. Sell the merchandise and petition for mitigation of liquidated damages.
> B. Hold the merchandise at his (importer's) premises.

C. Export the merchandise and file a claim for drawback of duty.

D. Export the merchandise under Customs supervision.

Rather than examining the options available in the answers, plaintiff offers a long chain of reasoning to prove that all of the possible answers were incorrect. Plaintiff observes that if he were the customs broker in question, he would have significantly more advice for his client than the simple answers provide.

Plaintiff focuses on the conclusiveness of the determination that the merchandise "is unfit for human consumption." Rather than taking this determination as a fact given in the question, plaintiff maintains that he would argue with the FDA testing of the product. Plaintiff cannot unilaterally rewrite the question.

Moreover, plaintiff chose B as the best answer, because even though keeping the merchandise at the importer's premises is not the same as keeping the goods in Customs custody, he would instruct the client to hold the merchandise at his premises for only a short period of time before turning it over to Customs custody. Thus, even plaintiff's extra-factual reasoning fails to provide a listed answer and plaintiff is forced to make assumptions grounded in some mystical notion of equivalency of various custodies.

The regulations state that "If merchandise released under a special permit for immediate delivery later is found to be prohibited * * * withdrawal or entry summary documentation and the deposit of estimated duties, if any shall not be required provided * * * the merchandise is *exported or destroyed* under Customs supervision * * *" 19 C.F.R. § 142.28(a)(1) (1989) (emphasis added). Given the existence of answer D, a clearly correct answer, the Assistant Secretary's decision to not permit plaintiff to rewrite the question was not arbitrary or capricious. Examinees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios.

5. *Question 92:*

Question 92 addresses what is necessary and what is unnecessary for liquidation when the importer enters certain merchandise under the Harmonized Tariff Schedule of the United States ("HTSUS") for use in his production of agricultural products. The question asks the examinee to choose which of the following is unnecessary for liquidation under the HTSUS:

A. A written declaration of intent that the merchandise will be used for agricultural purposes.

B. The merchandise is actually used for agricultural purposes.

C. The importer furnishes proof of agricultural use to satisfy Customs.

D. The proof of use is furnished within 3 years of entry or withdrawal from warehouse for consumption.

The portion of the Customs regulations relevant to this question states:

> When the tariff classification of any article is controlled by its actual use in the United States, three conditions must be met in order to qualify for free entry * * * The conditions are that:
> (a) Such use is intended at the time of importation.
> (b) The article is so used.
> (c) Proof of use is furnished within 3 years after the date the article is entered or withdrawn from warehouse for consumption.

19 C.F.R. § 10.133 (1989).

Obviously the test question requires the examinee to reflect upon what conditions are unnecessary for liquidation under this particular part of the regulations in order to determine whether the examinee is aware that the regulations list three conditions that must be met. Plaintiff argues that answer C is correct and that the official answer, choice D, is incorrect. Choice A is unnecessary because nowhere in the regulation does it specify that the importer must supply a written declaration of intent regarding usage of the merchandise. Choice C is an incorrect answer because, as the regulation clearly indicates, proof of use *is* required. The test-taker could conceivably be confused since C and D are overlapping. It is often the case, however, that two exam answers will be almost identical or that one answer is merely a part of a longer, more general answer. While tests designed in such a way might cause the examinee to think twice about an answer, they are not unfair to the test-taker.

Accordingly, the decision of the Assistant Secretary to deny plaintiff credit for his incorrect answer to this question was a reasonable decision.

### Conclusion

Parties should not conclude from the court's detailed examination of the test answers that the court is some kind of final reviewer of the Customs broker licensing examinations. The administering agency must be allowed some latitude in designing and judging its tests. Plaintiff here did not pass, but that is not the standard of review. The Assistant Secretary's decision not to grant a license is upheld because it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Accordingly, plaintiff's motion for judgment on the administrative record is denied, defendant's cross-motion is granted and this case is dismissed.